**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

June 22, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:    *Jesse F. v. Frank Bisignano, Social Security Administration*
       Civil No. 1:25-cv-03064-JMC

Dear Counsel:

Jesse Francis ("Plaintiff") petitioned this Court on September 16, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying his claims for disability insurance benefits ("DIB"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 14, 16, 17). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will affirm ALJ's and Appeals Council's determinations for the reasons explained below.

## I.    Procedural Background

Plaintiff filed his Title II application for DIB on August 30, 2021, alleging disability as of November 19, 2019. (Tr. 19).[1] Plaintiff's claim was denied initially on February 9, 2022, and again upon reconsideration on February 8, 2023. *Id.* at 98-11, 107-110. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 113-14. ALJ Clary Simmonds conducted a telephone hearing on November 14, 2023. *Id.* at 16-40. The ALJ subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame on January 5, 2024. *Id.* The Appeals Council affirmed ALJ Forrest-Doyle's decision on March 18, 2024. *Id.* at 2-8. Plaintiff filed an action for judicial review, and on December 5, 2024, the Court remanded the case for further administrative proceedings. *Id.* at 4964-67. On December 11, 2024, the Appeals Council vacated the final decision and remanded the case to an ALJ. *Id.* at 4968-4973.

---

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 8) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

1

ALJ Clary Simmons conducted a second telephonic hearing on June 5, 2025. *Id.* at 4889-4926. During that hearing, Plaintiff amended the alleged onset date to April 7, 2022. *Id.* On July 17, 2025, ALJ Simmons rendered a decision denying Plaintiff's claim for DIB. *Id.* Plaintiff subsequently filed this second action for judicial review.

## II.    The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ (and subsequently the Appeals Council) followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity since the April 7, 2022, the amended alleged onset date. (Tr. 4895). At step two, the ALJ and Appeals Council determined that Plaintiff suffered from the following severe impairments: "obesity, migraine headache, disorders of the skeletal spine (cervical and lumbar spine), post-traumatic stress disorder, history of traumatic brain injury with mild cognitive impairment, and adjustment disorder with anxiety and depressed mood (20 CFR 404.1520(c))." *Id.*

At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.*; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant needs a sit stand option allowing changes in position as needed while remaining on task. The claimant is limited to occasional climbing of ladders, ropes, or scaffolds. The claimant can occasionally balance. The claimant is limited to no more than occasional exposure to atmospheric conditions (strong odors/fumes/dusts/gases/poor ventilation). The claimant can work in an environment with no bright sunlight or loud noise. The

claimant is limited to no more than occasional exposure to hazards such as dangerous moving machinery and unprotected heights. The claimant can understand, remember and carry out simple instructions. The claimant can maintain attention and concentration to complete a workday and workweek with regular breaks (defined as the morning break, the afternoon break, and the lunch break). The claimant is limited to occasional interaction with the public.

*Id.* at 4901. The ALJ further concluded that Plaintiff was unable to perform past relevant work as an Infantry Unit Leader. *Id.* at 4916.

Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) Routing Clerk (DOT #222.687-022) with 36,000 jobs nationally; (2) Collator Operator (DOT #208.685-010) with 20,000 jobs nationally; and (3) Router (DOT #222.587-038), with 15,000 jobs nationally. *Id.* at 4917. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from April 7, 2022, through the date of the ALJ's decision. *Id.*

## III.    Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

## IV.    Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff faults the ALJ's and Appeals Council's RFC determination on several grounds: (1) the ALJ failed to include a function-by-function assessment of material work related functions; and (2) the ALJ's evaluation of Plaintiff's "moderate difficulties" in concentration, persistence, or pace does not comply with the Fourth Circuit's holding in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). (ECF No. 14, 17). For the reasons that follow, the ALJ's and Appeals Council's RFC determination is supported by substantial evidence. As such, I will affirm the case.

a.    <u>The ALJ's RFC Determination is Supported by Substantial Evidence</u>

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. §

416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up). The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188. A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original). Indeed, "the driving consideration is whether the ALJ's analysis allows for meaningful judicial review," *Lail v. Kijakazi*, No. 21-2133, 2022 WL 1711809, at *1 (4th Cir. May 27, 2022). "Thus . . . remand is appropriate only where 'inadequacies in the ALJ's analysis frustrate meaningful review,' such as when an ALJ fails to assess a claimant's capacity to perform relevant functions or does not resolve material disputes in the record." *Delesline-Meggett v. Comm'r of Soc. Sec.*, No. 21-1859, 2023 WL 8230802, at *1 (4th Cir. Nov. 28, 2023).

i.    *The ALJ and Appeals Council Properly Determined Plaintiff's RFC*

Plaintiff argues the relevant question is "whether the ALJ made the required findings regarding Plaintiff's remaining ability to perform the material work-related functions at issue." (ECF No. 17 at 2). Because the RFC "is silent as to walking, lifting, carrying, pushing, and pulling, and only superficially addresses sitting and standing through a sit/stand option that does not identify Plaintiff's maximum capacity for either function in an eight-hour workday," Plaintiff urges that such omissions constitute reversible error. *Id.* The Commissioner argues that remand is not proper because the ALJ satisfied the "narrative discussion requirement" by fully discussing relevant evidence. (ECF No. 16 at 6).

SSR 98-6p requires the ALJ "first identify the individual's functional limitations or restrictions and assess her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of [20 CFR §§ 404.1545, 416.945]." SSR 98-6p, 1996 WL 374184, at *1 (emphasis added). This Court has recognized that by recounting a plaintiff's

impairments and stating an RFC misses the importance of determining whether the plaintiff can perform the work functions that inform what the RFC will be. *Carmen F. v. Bisignano*, Civil No. AAQ-25-0001, 2026 WL 772056, at *5 (D. Md. Mar. 19, 2026). This Court has repeatedly held that an ALJ must conduct a function-by-function assessment of work-related functions when determining an RFC, and that failure to do so may constitute grounds for remand. *See Henderson v. Kijakazi*, No. AAQ-20-3346, 2022 WL 1555408 (D. Md. May 17, 2022) (remanding where the ALJ cited to the regulation outlining functions, but did not perform a function-by-function analysis); *Nicole C. v. Kijakazi*, No. 1:22-cv-02123-JMC, 2023 WL 4027481 (D. Md. June 15, 2023) (remanding because the ALJ failed to properly perform a function-by-function analysis to guide the RFC determination); *Jennifer W. v. Kijakazi*, No. 1:22-cv-01177, 2023 WL 2245635 (D. Md. Feb. 27, 2023) (remanding where the ALJ evaluated plaintiff's symptoms but failed to conduct a function-by-function analysis); *Kenneth L. v. Bisignano*, No. 24-2627-DRM, 2025 WL 2781547 (D. Md. Sept. 29, 2025) (remanding where ALJ failed to perform a function-by-function analysis and the Court was unable to discern the ALJ's rationale in limiting the plaintiff to light work). When an ALJ does not perform a function-by-function analysis of the plaintiff's work-related functions, but the decision accounts for all functions relevant to the case, remand may not be warranted. *Sheena W. v. Kijakazi*, Civil No. 22-2377-BAH, 2023 WL 4456908, at *3 (D. Md. Jul. 11, 2023) (concluding that an ALJ's RFC was sufficient when the ALJ considered but rejected medical opinions that expressly contemplated the work-related activities).

To begin, the Court observes that many of the physical impairments at issue are related to Plaintiff's migraines and spinal limitations. Here, the RFC includes a limitation that Plaintiff needs a sit/stand option allowing changes in position as needed so he can remain on task. (Tr. 4901). The RFC otherwise limited him to occasional climbing and balance but did not address his ability to sit, walk, push, carry, or pull in a function-by-function assessment. *Id.* Rather, the ALJ considered those abilities by way of assessing the medical records, with a primary focus on the Plaintiff's mental impairments, which were of greater emphasis than his physical impairments. *See id.* at 4909-4911. The ALJ noted that Plaintiff reported trouble standing and walking for no more than 10 to 15 minutes before his back flares up and that he cannot lift heavy things because he drops things unexpectedly. *Id.* at 4902. For example, the ALJ noted that Plaintiff was able to walk his service dog for daily exercise in November of 2022, that as of July 2023, his balance improved to the extent that he did not need a cane to walk, and that in April 2025 Plaintiff was no longer taking pain medication for his low back and was able to play softball, although with minimal activity. *Id.* at 4903. The ALJ found unpersuasive Dr. Casagrande's cervical spine assessment as inconsistent with the record concerning Plaintiff's ability to lift, twist, stoop, or climb. The ALJ referred to the following provision:

> In the October 4, 2023, cervical spine assessment, Dr. Casagrande stated that the claimant had daily neck pain and numbness in his fingers, and he experiences 3-4 headaches per month with each headache lasting 2 hours. The claimant would need a therapy animal, and he could rarely lift up to 20 pounds. The claimant could rarely look down, turn his head right or left, look up, or hold his head in a static position. The claimant could never twist, stoop (bend), or climb ladders, he could rarely crouch or squat, and he could occasionally climb stairs. The claimant could use his right hand and arm 10 percent of the time to grasp, 25 percent of the time for fine manipulations, 25 percent of the time for reaching in front of the body, and 25

5

percent of the time for reaching overhead. The claimant could use his left hand and arm 25 percent of the time to grasp, 50 percent of the time for fine manipulations, 25 percent of the time for reaching in front of the body, and 25 percent of the time for reaching overhead. The claimant would be off task 25 percent or more of the workday, and he would be absent from work more than four days per month. The claimant would have difficulty with vision, hearing, temperature extremes, and wetness, noise dust, humidity, fumes, gases, and hazards due to headaches. (Ex. 24F/1-5). This is consistent with a less-than-sedentary/less than full time residual functional capacity.

Dr. Casagrande's cervical spine assessment is not persuasive because it is not consistent with the evidence of record. Dr. Casagrande supported his less-than-sedentary limitations by citing to the claimant's herniated disc at C6-7 and his chronic headaches. (Ex. 24F/1-2). However, Dr. Casagrande's limitations are not supported by his own November 2022 medical records noting that the claimant's headaches were "much better" after Botox, and the claimant also reported that he was applying to Yale Law School. (Ex. 18F/76).

Additionally, Dr. Casagrande's cervical spine assessment is not consistent with the evidence of record. For example, the claimant was able to attend college courses consistently and earn good grades. He also reported that he was tired from writing papers. (Ex. 18F/76). There is no evidence in the record that the claimant was unable to perform his school work due to problems with his upper extremities. The claimant's September 2022 neurological records also showed a normal range of motion in neck flexion with no muscle spasms. (Ex. 18F/97). Additionally, his gait was normal, and his motor tone was normal in the upper limbs. (Ex. 18F/97). Finally, the record shows that the claimant returned to playing softball after an ankle injury. (Ex. 39F/1). Accordingly, I find that a reduction to the light exertional level accounts for the claimant's pain and numbness in his upper extremities from his cervical spine impairment.

*Id.* at 4909. The ALJ continued by recognizing Dr. Casagrande's statement that "work with color vision. The claimant can occasionally perform work with field of vision. The claimant had difficulty walking up and down stairs, and he could not work with small objects such as those involved in doing sedentary work. The claimant could rarely lift up to 20 pounds, and he could never stoop (bend), crouch, or squat. The claimant would need to take daily unscheduled breaks during the workday, and he would have to rest 15 to 30 minutes before returning to work. Finally, the claimant would be off task 25 percent or more of the workday. This is consistent with a less than full time residual functional capacity." *Id.* at 4910. The ALJ ultimately decided that Plaintiff's visual impairments did not cause "more than minimal limitation in the claimant's ability to perform work-related activities, and it is therefore not severe." *Id.* The ALJ next found Dr. Casagrande's October 4, 2023 lumbar spine assessment unpersuasive:

In the October 4, 2023, lumbar spine assessment, Dr. Casagrande stated that the claimant could sit for 1 hour at one time before needing to get up, and he can stand for 45 minutes at one time before needing to sit down or walk around. The claimant

6

can sit less than 2 hours out of an 8- hour workday, and he can stand/walk less than 2 hours out of an 8-hour workday. The claimant would need a job that permitted shifting positions at will from sitting, standing, or walking, and he would need to take daily unscheduled breaks during the workday. The claimant would have to rest 15 to 30 minutes before returning to work. The claimant would need to walk 15 to 30 minutes during an 8-hour workday. The claimant would need a therapy animal, and he could rarely lift up to 20 pounds. The claimant could never stoop (bend), crouch, or squat, he could rarely climb ladders, and he could occasionally climb stairs. The claimant would be off task 25 percent or more of the workday, and he would be absent from work more than four days per month. (Ex. 27F/1-4). This is consistent with a less-than-sedentary/less than full time residual functional capacity.

Dr. Casagrande's lumbar assessment is not persuasive because it is not consistent with the evidence of record. Dr. Casagrande support his assessment by citing to the claimant's chronic lower back pain and sciatic pain and to the claimant's 2020 MRI showing a herniated disc at L5- S1. (Ex. 27F/1; Ex. 29F/2; Ex. 39F/312).

However, Dr. Casagrande's assessment is not consistent with the evidence of record. For example, in November 2022, the claimant reported that he rarely required Gabapentin for the nerve pain in his back, and he was taking Ibuprofen medication occasionally, (Ex. 18F/91). He was also able to walk his service dog daily. (Ex. 18F/91). The claimant was able to return to playing softball in April 2025 after recovering from his right ankle injury. (Ex. 39F/1). Accordingly, I find that the claimant is able to perform work at the light exertional level with the limitations described above. The claimant is further limited to occasional climbing of ladders, ropes, or scaffolds and occasional balancing to account for his lower back pain. I have also included a sit stand option to allow the claimant to change positions as needed in the workplace to address his lower back pain.
…
In addition, Dr. Casagrande's statement that the claimant has a limited ability to bend, stoop, and walk is not consistent with the evidence of record. For example, the record shows that the claimant was able to attend college classes, and he returned to playing softball after an ankle injury. (Ex. 18F/91; Ex. 39F/1). He also reported in November 2022 that he was able to walk his service dog daily. (Ex. 18F/91). Accordingly, I find that the claimant is able to perform work at the light exertional level with the limitations described above.

*Id.* at 4911. Based on the foregoing, it can hardly be stated that the ALJ did not consider Plaintiff's work-related abilities such as sitting, standing, carrying, lifting, or walking or that the RFC "is silent as to walking, lifting, carrying, pushing, and pulling," as Plaintiff argues. (ECF No. 17 at 2). The ALJ simply did not find persuasive the medical opinions that proposed limitations for reasons clearly articulated and often related to Plaintiff's daily activities such as playing softball and the medical evidence. The ALJ continued through this pattern of reasoning for Dr. Montemayor, Dr. Griminardo, and Dr. Casagrande's other records. *Id.* at 4912. Finding their

opinions of Plaintiff's ability to climb, bend, squat, reach, sit, walk, stand, lift, carry, and grasp consistent with light work (*Id.* at 4912-13), the ALJ ultimately reached an RFC that limited the Plaintiff to light work with a sit/stand option. Thus, as in *Sheena W.*, the Court is persuaded that the ALJ's decision accounts for all functions relevant to the case and reached an RFC of light work consistent with Plaintiff's ability to lift, carry, push, pull, walk, sit, and stand. *Sheena W.*, 2023 WL 4456908, at *3; *see also Bell v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-1351, 2017 WL 2416906, at *3 (D. Md. June 2, 2017) (finding ALJ's RFC to be supported by substantial evidence where "medical opinions ... explicitly discuss[ed the claimant's] function-by-function exertional limitations and support[ed] the ALJ's RFC determination," enabling "meaningful review" of the decision). Therefore, the Court finds that that ALJ's analysis permits the Court to engage in meaningful review and any error here was harmless in view of the reasoning accompanying the medical records, which explicitly addressed those categories. *Id.* I will affirm the ALJ's opinion on this issue.

> ii.     *The ALJ's Evaluation of Plaintiff's Moderate Difficulties in Concentration, Persistence, or Pace Comports with Mascio v. Colvin.*

Plaintiff next argues the ALJ's evaluation of Plaintiff's "moderate difficulties" in concentration, persistence, or pace does not comply with the Fourth Circuit's holding in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). At step three, an ALJ must determine whether a claimant's impairments meet or medically equal any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.*00 et. seq.* When evaluating a claimant's mental disorder, defendant must employ a special technique to assess the degree of limitation in each functional area. 20 C.F.R. §§ 416.920a(b),(c)(2)(2017). Limitations include none, mild, moderate, marked, or extreme. *Id.* § 416.920a(c)(4). A moderate limitation signifies that the claimant has only a fair ability to function in the relevant area of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c) (2017). Relevant here, concentration, persistence, or pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." *Id.* at § 12.00(E)(3). Plaintiff is correct that when a plaintiff has a "moderate" limitation in maintaining concentration, persistence, or pace, the ALJ must either include a corresponding limitation or explain why no such limitation is necessary. *Shinaberry v. Berryhill*, 952 F.3d 113, 121 (4th Cir. 2020); *see also Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015).

Plaintiff argues the ALJ here did neither. Yet, *Mascio* "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry*, 952 F.3d at 121. In *Shinaberry*, when the ALJ addressed the claimant's lifelong, borderline intellectual disability and explained why the psychological evidence in the claimant's statements supported a mental limitation to simple, routine, and repetitive tasks, the ALJ's findings were proper on that issue. *Id.* at 122.

The Court finds that this case is more like that in *Shinabery* than *Mascio*. Here, the ALJ discussed at length the Plaintiff's ability to pay attention, complete tasks, and maintain concentration as early as step two. As the Commissioner states, the ALJ considered Plaintiff's ability to maintain good grades and receive an acceptance to Yale University for law school in the RFC's analysis of his mental impairments. *E.g.*, (Tr. 4904-05) ("In May 2022, the claimant reported that his psychotropic medications had helped him "significantly" in school. (Ex.

8

18F/120). In addition, the claimant was planning to take the LSAT test for law school, and he was taking an online course through Kaplan. (Ex. 18F/113). He also noted in September 2022 that he was applying to Yale Law School, and that his Adderall medication was "helping a lot." (Ex. 18F/100). In November 2022, the claimant reported that school was going well, and he was able to concentrate and complete tasks. (Ex. 18F/91). In April 2025, the claimant was able to return to playing softball after a recent ankle injury in January 2025. (Ex. 39F/1). This evidence, which shows significant activities of daily living, supports a finding that the claimant is able to perform work at the light exertional level with the limitations described above.).  The ALJ further found unpersuasive Dr. Smith's and Dr. Sandrock's assessments of his mental impairments

> because they are not consistent with the evidence of record. For example, at the July 16, 2024, psychological consultative examination, the claimant was slow in responding to questions, and he had some difficulty finding the words to express his thoughts. (Ex. 32F/2). Although this was a one-time examination, it does support a finding that the claimant's mental impairments are severe. In addition, the claimant testified that he had difficulty with focus and concentration, and he experiences side effects of grogginess and mood issues from his antidepressants. (Hearing Testimony). The record also shows that the claimant has been attending counseling at the Dundalk Vet Center since March 2024 for his anger concerns and trauma-based symptoms. (Ex. 28E). Accordingly, I find that the claimant's mental impairments are severe in this case, and I have included mental limitations in the residual functional capacity above.

*Id.* at 4906. The ALJ continued,

> I have considered the medical opinions offered by Eugene Casagrande, M.D. In a November 20, 2020, medical report for a service dog, Dr. Casagrande stated that the claimant was able to physically, mentally, and emotionally participate in the service dog training program. (Ex. 17F/1- 8). The claimant might need periodic breaks for 10 minutes every 50 minutes. (Ex. 17F/2). In a February 21, 2021, mental health report for the guide dog program, Dr. Casagrande stated that the claimant was diagnosed with post-traumatic stress disorder, but he was able to care for himself and others, and he had never been hospitalized for mental health issues. (Ex. 2F/1-3).
>
> These assessments are partially persuasive because they are mostly consistent with the evidence of record. Dr. Casagrande supported his statement that the claimant could participate in the guide dog program by citing to the claimant's mental health treatment plan with therapy and medication and his supportive significant other. (Ex. 2F/1-2). This statement is also supported by Dr. Casagrande's July 2021 treatment notes showing that the claimant was continuing in trauma-focused therapy. (Ex. 1F/135)
> …
> In the October 4, 2023, psychiatric review technique, Dr. Casagrande stated that the severity of the claimant's impairments met the listing for post-traumatic stress disorder, and he needed ADA assistance in law school. The claimant had no

9

limitations in understanding, remembering, or applying information, moderate limitations in interacting with others and concentrating, persisting, or maintaining pace, and a mild limitation in adapting or managing oneself. He also noted that the claimant met the "C criteria" of the listings by receiving mental health therapy that is ongoing and diminishes symptoms and signs of the mental disorder. (Ex. 22F/1-15).

Dr. Casagrande's psychiatric review technique is not persuasive because it is not consistent with the evidence of record. Specifically, Dr. Casagrande's opinion that the severity of the claimant's impairments meets the listing for post-traumatic stress disorder is not supported by his own assessment, which is internally inconsistent. For example, Dr. Casagrande indicated that the claimant's had no limitations to mild and moderate limitations in the four paragraph B criteria. (Ex. 22F/13). This does not support a finding that the severity of the claimant's impairments meets a listing, as that requires two marked limitations or one extreme limitation. Furthermore, Dr. Casagrande stated that the claimant was receiving mental health therapy that is ongoing and diminishes symptoms and signs of the mental disorder, as described under Paragraph C. (Ex. 22F/14). However, Paragraph C also requires marginal adjustment, that is, minimal capacity to adapt to changes in the environment or to demands that are not already part of daily life, and Dr. Casagrande did not check that box for the claimant's impairments. (Ex. 22F/14). Therefore, the Paragraph C criteria are also not met in this case.

Dr. Casagrande's assessment is also not consistent with the evidence of record. For example, in April 2022, the claimant stated that his grades were good. (Ex. 18F/193-196). Despite his frustrations with his child custody case, the claimant denied any low points. (Ex. 18F/159). In February 2023, the claimant reported that he continued to attend law school courses, and he was able to problem solve and move forward despite feeling a lot of pressure. (Ex. 28F/18). Similarly, the claimant's August 2023 mental status examination showed good eye contact, normal speech, a goal-directed thought process, and grossly intact cognition. (Ex. 19F/9). Accordingly, I find that the severity of the claimant's impairments does not meet any Listings in this case, and he has no more than moderate limitations in mental functioning.

*Id.* at 4906-08. The ALJ's analysis at Steps Two and Three further addresses the ability to maintain concentration, pace, and persistence in explicit detail. The Court understands Plaintiff's argument about the RFC's social interaction limitation. However, the Court does not agree that the RFC analysis rails to include an explanation as to why no further limitation is necessary. In view of the above reasoning, the Court finds that there is sufficient explanation of the Plaintiff's ability to maintain concentration, persistence, and pace such that the Court can engage in meaningful review. *Id.* at 4916 ("The claimant's problems with memory, sustained concentration, and social interaction support the additional mental limitations restricting the claimant to jobs requiring the ability to understand, remember and carry out simple instructions. The record shows that the claimant can maintain attention and concentration to complete a workday and workweek with regular breaks (defined as the morning break, the afternoon break, and the lunch break), as he has

been able to complete college classes, earn acceptance at Yale Law School, and take care of his children. Finally, the claimant is limited to occasional interaction with the public to account for his difficulty being in groups of people and his nervousness being in public.").

Therefore, I will affirm the ALJ's decision.

## V.      Conclusion

In sum, the Court agrees with Defendant that the ALJ and subsequently the Appeals Council adequately explained Plaintiff's RFC determination and underlying reasoning.  In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is supported by substantial evidence for the reasons explained above.  Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is affirmed.  The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge

11